William C. LAMBERT and Lambert
Enterprises, Inc., Appellants
(Defendants Below),

v.

YELLOWBIRD, INC., Appellee
(Plaintiff Below).

No. 4–885A220.

Court of Appeals of Indiana,
Fourth District.

Aug. 6, 1986.

Raymond L. Faust, Baker, Orbison, Bales & Knowles, Carmel, for appellants.

Richard L. Gilliom, Michael K. Irwin, Donn H. Wray, Stewart, Irwin, Gilliom, Meyer & Guthrie, Indianapolis, for appellee.

YOUNG, Presiding Judge.

William Lambert and Lambert Enterprises, Inc. appeal a jury verdict awarding treble damages to Yellowbird, Inc. pursuant to IND. CODE 34-4-30-1. Lambert raises the following issues on appeal:

1) Did the trial court err in determining that the substantive law of Indiana governs this case?

2) Did the trial court err in refusing Lambert's tendered instruction No. 7, dealing with demand?

3) Is the evidence sufficient to support the jury verdict in favor of Yellowbird?

4) Did the trial court err in denying Lambert's motion for judgment on the evidence?

We affirm the judgment against William Lambert and Lambert Enterprises, Inc. and award attorney's fees.

Yellowbird is a New Mexico corporation involved in the aircraft salvage business. It dismantles helicopters and rebuilds salvageable parts. Its sole owner is Ben Morris.

Lambert Enterprises is an Indiana Corporation owned by William Lambert. In 1981, the company's helicopter needed a new transmission. William Lambert saw Yellowbird's advertisement for replacement transmissions in *Trade-A-Plane,* a nationwide publication.

In April of 1981, Lambert phoned Morris regarding his need. Lambert represented to Morris that his transmission was in working order, but merely needed an over-

haul because it had the maximum amount of hours on it allowed by the FAA. After several phone conversations, the two negotiated a deal whereby Lambert would pay Yellowbird $4500 and trade his old transmission, a Dash 25 light duty transmission, in exchange for a rebuilt Dash 27 heavy duty transmission. A Dash 25 differs from a Dash 27 in the size of its internal components.

On May 9, Yellowbird, through Morris, shipped Lambert a rebuilt Dash 27 transmission. On May 12, Lambert picked up the transmission and gave a cashier's check for $4500 to the clerk. The following day Lambert phoned Morris to state that he was unhappy with the transmission and wanted to return it. He asked Morris if he could use the fan quill drive from the Dash 27 Morris had sent, in order to get his helicopter in flying order for the Indianapolis 500. He later asked Morris if he could use the top casing from the Dash 27. Morris testified that he agreed to let Lambert use the fan quill drive temporarily but refused to let Lambert use the top case.

Lambert phoned Morris again and stated that he needed his money back immediately so he could purchase another transmission. Morris agreed and immediately returned the cashier's check to Lambert. He placed an endorsement on the back of the check demanding immediate return of the transmission he had shipped to Lambert. Lambert admitted that he read the endorsement.

On June 17, after numerous calls, Morris finally received a transmission from Lambert. He testified that he immediately recognized that the transmission was not the same one he had shipped to Lambert. The top casing was visibly cracked, the data plate had been switched, and the bottom casing had been switched. Further, the transmission returned to Morris was a Dash 25 in poor condition. Morris was able to recognize the distinctive sandblasting pattern used by Yellowbird on the middle casing; that part had come from his original transmission.

Later, when Morris inspected the transmission in Lambert's helicopter, he recognized the distinct sandblasting pattern on the top and bottom casings as the pattern used by Yellowbird. In addition, he recognized that the data plate on Lambert's transmission had been tampered with and that Lambert's transmission was now a Dash 27.

Lambert admitted taking his Dash 25 and the Dash 27 Yellowbird had sent him to a certified mechanic to have one good transmission built from the two. He admits that the top casing on his transmission came from the transmission Yellowbird had sent, but maintains that Morris gave him permission to use that part.

■ Lambert contends the trial court erred in applying the substantive law of Indiana rather than New Mexico. Yellowbird brought this action pursuant to IC 34–4–30–1, which states:

> If a person suffers a pecuniary loss as a result of a violation of IC 35–43, he may bring a civil action against the person who caused the loss for:
>
> (1) an amount not to exceed three (3) times his actual damages;
>
> (2) the costs of the action; and
>
> (3) a reasonable attorney's fee.[1]

IND. CODE 35–43 involves offenses against property. The treble damages statute therefore creates a civil action arising from criminal behavior. Since an action for treble damages is a civil action which is more closely analogous to tort principles than to contract principles, the doctrine of *lex loci delicti* will determine conflict of law questions. *Hubbard Manufacturing Co. v. Greeson* (1986), Ind.App., 487 N.E.2d 825, 827; *Eby v. York-Division, Borg-Warner* (1983), Ind.App., 455 N.E.2d 623, 626.

> Literally translated, [*lex loci delicti*] means the law of the place where the wrong occurred. Black's Law Dictionary 820 (5th ed. 1979). When this doctrine is applied, the law of the place where the

---

1. New Mexico does not have a comparable statute.

allegedly tortious conduct occurred governs all matters going to the basis of the right of action or affecting substantive rights of the parties. 16 Am.Jur.2d at sec. 99.

*Hubbard Manufacturing, supra* at 826–827. Since the matters to be determined here are substantive and not merely remedial and procedural, the *lex loci delicti* rule applies.

▆▆▆ Under *lex loci delicti,* we must determine where the wrong is deemed to have occurred. The general rule is that the wrong occurs where the injury or death occurred. *Maroon v. State Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404, 409. As it is sometimes more generally put, the place of wrong is the place where the last event necessary to make an actor liable for an alleged tort takes place. 15A C.J.S. *Conflict of Laws* § 12(2)(b).

▆▆▆ Applying the "place of the injury test" as developed in *Maroon, supra,* we conclude that the wrong occurred in Indiana. The fact that negotiations took place over the phone between Morris in New Mexico and Lambert in Indiana does not complicate the issue as much as Lambert would have us believe. As previously mentioned, the purpose of the treble damages statute is to allow plaintiffs to recover damages for criminal offenses against their property. The applicable criminal statute in this case is IND. CODE 35–43–4–3:

> A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor.

The statutory provisions focus on injury to the property. Here, the injury to the property occurred in Indiana when Lambert removed parts from Yellowbird's transmission and put them on his own.

▆▆▆ In determining the place of the wrong, the relevant injury under the treble damages statute is the injury to the property rather than any economic injury suffered by Yellowbird. For example, if an out-of-state plaintiff is the victim of a battery in Indiana, we apply Indiana law since the injury occurred in Indiana. The fact that the plaintiff might suffer economic injury, such as lost wages, when he returns to his home state would be irrelevant. Likewise here, the fact that Yellowbird has suffered economic loss in New Mexico is irrelevant; the injury to the property occurred in Indiana when Lambert exerted unauthorized control over it. Therefore, the trial court was correct in applying Indiana law.[2]

Lambert also contends the trial court erred in refusing his tendered instruction No. 7, regarding demand. In considering whether any error results from refusal of a tendered instruction we must consider: (1) whether the tendered instruction correctly states the law; (2) whether the evidence supports the instruction; and (3) whether other instructions adequately cover the substance of the tendered instruction. *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103; *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836, 838.

▆▆▆ Because we conclude that Lambert's tendered instruction No. 7 incorrectly states the law, we need not discuss the second and third elements of the *Davis* test. The instruction reads as follows:

> If you find that the defendants, or any of them, possessed property belonging to the plaintiff, and that such possession was initially lawful, you may find that such defendant or defendants converted plaintiff's property *only if* you first find that plaintiff made an unqualified demand for the return of the property and that such defendant or defendants refused to do so. (Emphasis added.)

Lambert, in tendering this instruction, was confusing the law of tortious conversion with the law of criminal conversion. *See*

---

**2.** Many jurisdictions have abandoned the *lex loci delicti* doctrine in favor of the more flexible "modern rule" or "most significant relationship approach" discussed in *Babcock v. Jackson* (1963), 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.

S.2d 743. Our supreme court has yet to adopt this rule, so we are bound to apply the *lex loci delicti* rule. We do note, however, that even under the "most significant relationship approach" Indiana law would govern in this case.

*Coffel v. Perry* (1983), Ind.App., 452 N.E.2d 1066. Since this action was brought pursuant to the treble damages statute, the elements necessary to establish conversion are those found in the criminal statute. As previously stated, criminal conversion occurs when a person knowingly or intentionally exerts unauthorized control over another person's property. IC 35–43–4–3. While a demand for return may be evidence as to the intent element, it is not itself an element of criminal conversion. Other evidence may exist which tends to prove the intent element, eg. Morris' testimony that he refused to allow Lambert to use the top casing. To instruct a jury that it cannot find that a criminal conversion has taken place absent a demand for return of the property is an inaccurate statement of the law. Therefore, Lambert's tendered instruction No. 7 was properly refused.

 Lambert also contends the evidence is insufficient to support the jury verdict. We conclude that Lambert has waived this argument pursuant to Ind. Rules of Procedure, Trial Rule 59(D)(2) for failure to raise it in his motion to correct errors. *Williams v. Graber* (1985), Ind.App., 485 N.E.2d 1369, 1377.

 Lambert's final contention is that the trial court erred in denying his motion for judgment on the evidence. Lambert filed the motion after Yellowbird's case in chief and proceeded, after denial, to present his own evidence. He renewed the motion in his motion to correct errors pursuant to Ind. Rules of Procedure, Trial Rule 50(A)(4), but failed to address it in his

initial appellate brief. Lambert attempted to raise the argument in his reply brief, but this effort did not properly preserve the issue. *Indiana Department of Mental Health v. State on Relation of Southlake Center for Mental Health* (1984), Ind.App., 467 N.E.2d 1256, 1265. We therefore conclude that Lambert has waived any error regarding the denial of the T.R. 50(A) motion for failure to argue it in his initial brief. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *In re Adoption of McNiece* (1982), Ind.App., 432 N.E.2d 440, 442.[3]

Both parties agree that if we affirm, Yellowbird should be awarded reasonable attorney's fees incurred on appeal. "A reasonable attorney's fee" is included as part of the recovery under IC 34–4–30–1. "A reasonable attorney's fee" encompasses appellate fees. *Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 723. Since Yellowbird has provided us with adequate documentation of the fees incurred on appeal, *Campins, supra* at 723, and since we affirm the judgment below, we hereby award Yellowbird appellate attorney's fees in the amount of $2,741.55.

Affirmed with fees.

MILLER and CONOVER, JJ., concur.

---

3. A contention regarding insufficiency of evidence to support a jury verdict differs from a contention that the trial court erred in denying a T.R. 50(A) motion for judgment on the evidence. The relevant inquiry under T.R. 50(A) is whether there is enough evidence to send the case to the jury, whereas the relevant inquiry under a claim of insufficient evidence to support the verdict is whether, after the jury gets the case, there is substantial evidence to support the jury verdict.

The two claims are closely related, but the way in which we review them is different. When reviewing a trial court's action on a T.R. 50(A) motion, we must consider only the evidence and reasonable inferences most favorable to the non-moving party. *Dettman v. Sumner* (1985), Ind.App., 474 N.E.2d 100, 103. In reviewing a claim of insufficiency of evidence to support the verdict, however, we view only the evidence most favorable to the judgment as well as all reasonable inferences to be drawn therefrom. *James v. Brink & Erb, Inc.* (1983), Ind. App., 452 N.E.2d 414, 416. We note that even absent waiver, there is substantial evidence of probative value to support both the sending of the case to the jury and the jury's verdict.