In the Matter of the ESTATE OF Derek James BRUCK.

No. 25A05–9306–CV–00198.

Court of Appeals of Indiana, Fifth District.

April 12, 1994.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, for appellant.

Alan D. Burke, Rochester, for appellee.

SHARPNACK, Chief Judge.

Kenneth Paul Bruck appeals the trial court's distribution of wrongful death settlement proceeds received by the estate of his son, Derek James Bruck. We affirm.

Bruck presents one issue for our review, which we restate as whether the trial court erred in distributing the wrongful death proceeds pursuant to Ohio law rather than Indiana law.

The facts most favorable to the trial court's decision are as follows. On October 6, 1989, Derek and his wife Michelle were struck by a semi-tractor trailer while standing beside their vehicle on the shoulder of the Ohio Turnpike near Fremont, Ohio. Derek died instantly, but eyewitnesses stated that Michelle lived for approximately ten to forty minutes after the accident. The driver of the semi subsequently tested positive for cocaine usage.

Separate estates were opened in Fulton County, Indiana, for Derek and Michelle. Both were Indiana residents and both died intestate. Neither left a substantial estate; Derek's estate was estimated to be less than four thousand dollars. At the time of death, Derek had no dependent children or dependent next of kin. On October 24, 1989, Beverly Ann Tolley, Derek's mother, was appointed administratrix of his estate.

On December 21, 1989, Michelle's estate filed a claim for the surviving spouse's share of Derek's estate. On January 22, 1990, the semi driver, his employer, and their insurance company settled with Derek's and Michelle's estates for $275,000.00 each in exchange for a full release from all liability. Subsequently, Michelle's estate filed a petition to determine heirship against Derek's estate. Derek's estate responded with a motion to dismiss and for hearing on distribution of wrongful death benefits. On March 23, 1990, a hearing was held.

The two central issues before the trial court in that initial proceeding were (1) whether Derek's settlement should be regarded as wrongful death proceeds or as assets of the estate and (2) whether Indiana law or Ohio law should be applied to the distribution of the settlement. On April 30, 1990, the court issued its order, finding (1) that the settlement must be regarded as wrongful death proceeds because it was "received pursuant to compromise and settlement approved by the Court as to a wrongful death claim," (Record, p. 74) and (2) that because Ohio law had permitted the wrongful death recovery, Ohio law should govern its distribution in the absence of applicable Indiana law.

On May 22, 1990, Beverly Tolley, as Administratrix, filed her petition for authority to distribute wrongful death settlement proceeds. On June 5, 1990, Tolley filed an affidavit for publication of notice indicating that she did not know the current whereabouts of Kenneth Bruck and requesting that notice by publication be issued in the Rochester Sentinel. Publication was accomplished on June 6, 13, and 20, 1993. On June 19, 1990, Michelle's estate settled its claim against Derek's estate for the sum of $5,000.00. Following stipulations of beneficial interests submitted by Derek's estate, the court entered an order approving the distribution, which provided ten percent each to Bruck, Polly Von Cook (Derek's sister), and Gary and Greg Basham (Derek's stepbrothers). Tolley received the remaining sixty percent of the settlement.

On July 20, 1990, the court ordered Bruck's portion of the settlement to be paid to the clerk of the court to be held for Bruck. On January 21, 1991, the court authorized the closing of the estate. On July 24, 1991, Tolley was informed by her attorney that Bruck intended to claim the money held by the clerk. On that date, Tolley, in her personal capacity, requested and received a temporary restraining order preventing the clerk of the court from distributing any sums of money to Bruck pending the resolution of Tolley's child support arrearage claim against Bruck.

In November, 1991, Bruck petitioned the court to vacate its order and informed the court that Tolley knew or should have known his whereabouts throughout the proceedings because he had lived in the same location for many years, as had his parents, and both locations were well known to Tolley. On April 8, 1992, the court vacated its order of

distribution and reopened the estate. On February 3, 1993, the court held a hearing on Bruck's motion to reconsider the court's order of distribution. Bruck appeared pro se. On February 8, 1993, the court entered an order denying modification of the original distribution order.

The issue before us is whether the trial court erred in applying Ohio law to the distribution of the wrongful death proceeds when the decedent and all but one heir are residents of Indiana and the injury occurred in Ohio. Indiana courts have dealt with similar conflict of law issues in determining the law to govern liability, but never before in determining the law to govern a distribution.

The traditional conflict of laws rule in torts has been to apply lex loci delicti—the law of the place where the injury occurred. 25A C.J.S. *Death* § 28; *Hubbard Mfg. Co., Inc. v. Greeson* (1987), Ind., 515 N.E.2d 1071, 1073. Under this general rule, the lex loci delicti governs the right of action or recovery, the nature of the right, and the availability to the defendant of particular defenses. 25A C.J.S. *Death* § 28. The modern trend, however, has been an abandonment the rule of lex loci delicti in favor of the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws, §§ 175 and 177. Bruck urges us to adopt this test in determining the law to govern the distribution of the wrongful death proceeds. Under the Restatement,

> "[i]n an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the party unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and of the parties in which event the local law of the other state will be applied."

Restatement (Second) of Conflict of Laws § 175 (1971). The Restatement provides further that the distribution of wrongful death proceeds should be governed by the state law selected to govern liability, except that

> where one state is the state of domicile of the decedent and the beneficiaries or of the defendant and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should

be applied to determine how the recovery in a wrongful death action should be distributed.

Restatement (Second) of Conflict of Laws § 177, Comment B (1971).

A modified version of the "significant relationship test" was adopted by the Indiana Supreme Court in *Hubbard, supra,* in the context of determining whether to apply Indiana or Illinois product liability law. In that case, the court described an approach for dealing with such conflict of law questions:

> "Choice-of-law rules are fundamentally judge-made and designed to ensure the appropriate substantive law applies. In a large number of cases, the place of the tort will be significant and the place with the most contacts. *E.g., Lambert v. Yellowbird, Inc.* (1986), Ind.App., 496 N.E.2d 406, 409 n. 2. In such cases, the traditional rule serves well. A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact. In those instances where the place of the tort bears little connection to the legal action, this Court will permit the consideration of other factors such as:
>
> 1) the place where the conduct causing the injury occurred;
>
> 2) the residence or place of business of the parties; and
>
> 3) the place where the relationship is centered.
>
> Restatement (Second) of Conflicts of Laws § 145(2) (1971). These factors should be evaluated according to their relative importance to the particular issues being litigated.

*Hubbard,* 515 N.E.2d at 1073–74. Thus, lex loci delicti is the rule presumptively to be applied unless the place of the tort is an insignificant contact, in which case other factors may be considered. The relative importance of those factors must then be evaluated in determining which state's law to apply. *See also Thomas v. Whiteford Nat. Lease* (1991), Ind.App., 580 N.E.2d 717, 718, and *Tompkins v. Isbell* (1989), Ind.App., 543 N.E.2d 680, 681. In the present case, Derek had no connection with Ohio other than to

make use of the Ohio Turnpike in travelling from New York to Indiana. The place of the tort must, therefore, be considered an insignificant contact, and we are left to consider other factors under the *Hubbard* analysis. In doing so, we are not confined to the three factors specifically suggested in *Hubbard*. The place where the conduct causing the injury occurred is clearly Ohio, and the residences of the parties (but one) is clearly Indiana; these factors are straightforward. The "place where the relationship is centered," relevant where a fiduciary relationship exists, is irrelevant here. We therefore look to other factors. In this case, the most relevant factor is the unique legal status of the wrongful death proceeds.[1]

■ Under Indiana's wrongful death statute, when the decedent leaves no surviving spouse, dependent children, or dependent next of kin, only medical, funeral, and administrative expenses may be awarded.[2] Ind. Code § 34–1–1–2. In contrast, Ohio's wrongful death statute provides that a wrongful death action may be brought for "the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death...." Ohio Rev.Code § 2125.02(A)(1). In distributing wrongful death proceeds, the Court "shall adjust the share of each beneficiary in such manner as is equitable, having due regard for the injury and loss to each beneficiary ... and for the age and condition of the beneficiary." Ohio Rev.Code § 2125.-03(A). Ohio law, therefore, not only permits recovery for survivors other than dependents and spouses, but permits an equitable distribution of the damages. While this fact is not dispositive in our choice-of-law analysis pur-

suant to *Hubbard*, it is nonetheless an important factor.

■ Another important factor is that under Indiana law, wrongful death proceeds do not become a part of the decedent's estate and are not subject to the claims of decedent's creditors. *Thomas*, 400 N.E.2d at 783.

> "The clear policy in Indiana as expressed in the decisions and statutes is that recovery of damages in wrongful death actions is only for the purpose of compensating for the pecuniary loss of a surviving spouse or dependent caused by the death of the decedent and to reimburse death creditor beneficiaries.... To allow damages which would not go to a dependent who has suffered pecuniary loss from the death of a decedent would not serve the purpose of the statute, but would serve only to punish the appellant."

*Id.* Thus, under Indiana law, the wrongful death proceeds awarded to Derek's estate may not become part of the estate and pass through intestate distribution.

■ Applying the *Hubbard* analysis to the present case, we find that the presumption in favor of lex loci delicti must be maintained in light of the legal lacuna into which this case falls, despite the fact that the place of the tort is an insignificant contact and despite the fact that all but one of the distributees reside in Indiana. Because Indiana's wrongful death statute does not contemplate the damages awarded in the present case, and because wrongful death proceeds may not enter the decedent's estate, the present case is best treated as outside the ambit of our statutory scheme for the distribution of wrongful death proceeds. No mechanism for

---

1. The fact that the wrongful death proceeds were recovered by settlement rather than by suit is not relevant to our analysis. Under the traditional rule, the lex loci delicti governs the determination of the beneficiaries and the apportionment or distribution of the recovery, and "[t]he fact that the sum to be distributed is recovered without suit, as by compromise or settlement, does not alter the rule that distribution is governed by the lex loci delicti." 25A C.J.S. *Death* § 25. *See also Lombardo v. Pollock* (1974), 21 Ariz.App. 537, 521 P.2d 636, 637 ("[i]t is the general rule that damages recovered from wrongful death,

whether by action, settlement or compromise, are to be distributed, apportioned, or disposed of in accordance with the provisions of the law of the state under whose statute the right to recovery accrued"), and *In re Vogel's Estate* (N.Y.Sur., 1958), 12 Misc.2d 237, 176 N.Y.S.2d 677.

2. When a surviving spouse or dependent dies, even of causes unrelated to the decedent's death, Indiana law provides no recovery for that spouse's or dependent's estate. *See Thomas v. Eads* (1980), Ind.App., 400 N.E.2d 778, 782.

the distribution of these damages exists in Indiana.

"[I]t may be taken as thoroughly established that the law of the forum will govern if the question for determination involves the remedy or procedure, *except* where the remedy prescribed by the foreign law which is the basis of the right sought to be enforced is so inseparable therefrom that it must also be enforced in order to preserve the integrity of the substantive right."

15A C.J.S. *Conflict of Laws* § 9 (emphasis added). This principle may be analogized to the present case. Here, the distribution of the recovery is inseparable from the recovery in that only under Ohio law can the distribution fulfill the essential purpose of the damages, which is to benefit the immediate survivors regardless of dependency. The trial judge correctly applied equitable principles under Ohio law to the distribution of the wrongful death proceeds.

■ Bruck argues that in the absence of guidance from Indiana's wrongful death statute, the damages should be distributed pursuant to Indiana's intestate succession laws. Bruck cites the New York case of *Estate of Caccamo* (N.Y.Sur., 1972), 71 Misc.2d 391, 336 N.Y.S.2d 77, for the proposition that the recovery and distribution aspects of wrongful death cases may be separated when choice-of-law questions arise, in which case the court should "isolate the particular issue and ... analyze and measure the relevant governmental interests of the respective states in that issue." *Id.* at 78–79. Such an analysis may indeed be relevant where statutory schemes conflict, but here, in the absence of applicable Indiana law, Ohio law is the appropriate choice.

**AFFIRMED.**

BARTEAU and BAKER, JJ., concur.