# FOR PUBLICATION



FILED
Jul 25 2013, 6:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GEORGE W. STEPHENSON**
Michael & Stephenson
Logansport, Indiana

ATTORNEY FOR APPELLEE:

**JANET G. HORVATH**
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDDIE G. SHOWLEY, Executor, ESTATE OF<br>PHILLIP J. SHOWLEY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 09A04-1301-ES-22 |
| | ) | |
| TRACEY KELSEY, Individually and as<br>Successor Personal Representative of the<br>ESTATE OF SONYA SUE SHOWLEY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Thomas C. Perrone, Judge
Cause No. 09D01-1111-ES-33

**July 25, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Eddie G. Showley, as Executor of the Estate of Phillip J. Showley (Showley), appeals the trial court's Order, distributing the wrongful death proceeds to Appellee-Petitioner, Tracey Kelsey (Kelsey), Individually and as Successor Personal Representative of the Estate of Sonya Sue Showley.

We affirm.

## ISSUE

Showley raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it distributed the wrongful death proceeds pursuant to the laws of the State of Rhode Island.

## FACTS AND PROCEDURAL HISTORY

Sonya Sue Showley (Sonya), domiciled in Indiana, died intestate on May 26, 2006, due to a defective hernia patch. At the time of her death, she was married to Phillip Showley (Phillip). To pursue an action for the hernia patch's improper design and manufacture, Phillip sought to be appointed personal representative of Sonya's estate. To that end, he filed a petition for issuance of letters with the trial court on April 25, 2008, listing Tracy Kelsey (Kelsey) as sole heir of Sonya's estate.[1] Kelsey is Sonya's adult daughter, she is not Phillip's daughter. On April 28, 2008, Phillip was appointed as administrator of Sonya's estate. As administrator, Phillip filed a tort claim against Davol

---

[1] On October 12, 2011, Phillip's estate filed a petition to rectify the omission in the petition for issuance of letters requesting the trial court to add Phillip as heir of Sonya's estate.

2

Inc. and C.R. Bard, Inc. in Rhode Island, instituting, in pertinent part, an action for Sonya's wrongful death.

On August 7, 2011, while the tort claim action was pending in Rhode Island, Phillip died. On August 15, 2011, as Sonya's sole remaining heir, Kelsey filed a petition for appointment of successor personal representative of Sonya's estate, which was granted by the trial court on August 22, 2011. On November 8, 2011, Kelsey, as administrator of Sonya's estate, accepted a gross settlement offer of $292,500 for the Rhode Island tort claim, which was classified as a wrongful death entitlement.

On June 7, 2012, Kelsey filed her personal representative's intermediate accounting and petition for partial distribution. In this petition, Kelsey proposed to apply the Rhode Island statutory scheme for distribution of the wrongful death proceeds. Application of the Rhode Island statute would award these proceeds to Kelsey, as Sonya's only surviving beneficiary. On June 27, 2012, Phillip's estate objected to the petition for partial distribution. Showley, Phillip's son and personal representative of Phillip's estate, argued that Indiana law should be applied to the distribution and as such, all proceeds should be awarded to Phillip's estate. Showley is not Sonya's son; Phillip and Sonya did not have children together. On July 11, 2012, the trial court conducted a hearing on Kelsey's petition. On October 2, 2012, the trial court issued its Order, distributing the wrongful death proceeds pursuant to the laws of the State of Rhode Island and awarding the settlement proceeds to Kelsey, as Sonya's only surviving beneficiary.

On November 1, 2012, Showley filed a motion to correct error, which was denied by the trial court without a hearing.

Showley now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Showley contends that the trial court erred when it approved Kelsey's petition for partial distribution and awarded her the wrongful death settlement as the sole surviving beneficiary of Sonya's estate pursuant to the laws of Rhode Island. Showley maintains that the wrongful death proceeds should have been distributed pursuant to Ind. Code § 34-23-1-1 and thus, Phillip's estate would have been the sole beneficiary.

This case comes before us as an appeal from a denial of a motion to correct error. A trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion. *Hawkins v. Cannon*, 826 N.E.2d 658, 662 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

Properly characterized, the issue before us is whether the trial court abused its discretion in applying Rhode Island law to the distribution of the wrongful death proceeds when the decedent and all heirs are residents of Indiana and the injury, giving rise to the wrongful death settlement, occurred in Indiana but suit was filed in Rhode Island. We analyzed a similar question in *Matter of Estate of Bruck*, 632 N.E.2d 745 (Ind. Ct. App. 1994), in which we approved the distribution of wrongful death proceeds in accordance with Ohio law.

In *Bruck*, two separate estates were opened in Indiana for spouses Derek and Michelle who had died intestate after they were killed in an accident in Ohio. *Id*. at 746.

4

Michelle survived Derek for approximately ten to forty minutes. *Id*. Analyzing the issue of determining the law to govern a wrongful death distribution as one of first impression, we first turned to the traditional *lex loci delicti*—the law of the place where the injury occurred. *Id*. at 747. Recognizing the modern trend of abandoning the *lex loci delicti* in favor of the significant relationship test, we noted that "[i]n this case, the most relevant factor is the unique legal status of the wrongful death proceeds." *Id.* at 748. We acknowledged that pursuant to Indiana's wrongful death statutes, no award would have been made as Derek had not left a surviving spouse or dependent children; whereas Ohio law permits not only recovery for survivors other than dependents and spouses, but also permits an equitable distribution of the damages. *Id*. Another distinction focused on the fact that the wrongful death proceeds may not become part of the estate and pass through intestate distribution in Indiana. *Id*. As such, we concluded that

> Because Indiana's wrongful death statute does not contemplate the damages awarded in the present case, and because wrongful death proceeds may not enter the decedent's estate, the present case is best treated as outside the ambit of our statutory scheme for the distribution of wrongful death proceeds. No mechanism for the distribution of these damages exists in Indiana.
>> [I]t may be taken as thoroughly established that the law of the forum will govern if the question for determination involves the remedy or procedure, *except* where the remedy prescribed by the foreign law which is the basis of the right sought to be enforced is so inseparable therefrom that it must also be enforced in order to preserve the integrity of the substantive right.
> Here, the distribution of the recovery is inseparable from the recovery in that only under Ohio law can the distribution fulfill the essential purpose of the damages, which is to benefit the immediate survivors regardless of dependency.

*Id*. at 748-49 (quoting 15A C.J.S. *Conflict of Laws* § 9).

5

Likewise, here, Phillip, as initial administrator of Sonya's estate, filed a suit for wrongful death based on the laws of Rhode Island. In his complaint, Phillip requested to be awarded punitive damages for Sonya's wrongful death. Pursuant to Rhode Island, punitive damages are permitted under the wrongful death statute, whereas this award cannot be made under Indiana law. *Compare* R.I. Gen. Law § 10-7-7.1 *with* I.C. § 34-23-1-1. Under Indiana's wrongful death statute, when the decedent leaves no surviving spouse, dependent children, or dependent next of kin, only medical, funeral, and administrative expenses may be awarded; while under Rhode Island statute a wrongful death action may be brought for the benefit of survivors other than dependents and spouses and provides for a minimum recovery of $250,000. *Compare* I. C. § 34-23-1-1 *with* R.I. Gen. Law § 10-7-2.

As in this situation a recovery under the Indiana wrongful death statute would have been doubtful, this case falls into a similar legal lacuna as *Bruck*. Because a recovery only exists under the law of Rhode Island, its distribution cannot be separated and must be enforced in accordance with Rhode Island statute in order to preserve the integrity of the underlying substantive right.

In support of his argument that Indiana law should be applied, Showley focuses on *Bemenderfer v. Williams*, 745 N.E.2d 212 (Ind. 2001) where our supreme court held that the wrongful death statute does not operate to preclude the statutory beneficiary who dies before judgment from recovering wrongful death damages. In other words, Showley maintains that even though Phillip survived Sonya but died prior to the settlement of her wrongful death, Phillip's estate is the sole beneficiary of the proceeds. However, by

6

falling exclusively within Indiana's jurisdiction, *Bemenderfer* does not provide us with guidance to resolve the threshold procedural choice of law issue we are faced with here as the instant situation was derived from a cause instituted in Rhode Island. Therefore, we find *Bemenderfer* inapplicable to the facts before us.[2]

In sum, based on the unique facts of the case, we conclude that the trial court properly applied the law and thus, did not abuse its discretion by applying Rhode Island statutory law to the distribution of the wrongful death settlement.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly ordered the wrongful death proceeds to be distributed pursuant to the laws of the State of Rhode Island.

Affirmed.

BRADFORD, J. concurs

BROWN, J. dissents with separate opinion

---

[2] For the first time in his reply brief, Showley argues that even if Rhode Island statutory law is applicable to the distribution of the wrongful death proceeds, Phillip's estate is entitled to receive half of the amount recovered based on R.I. Gen. Law § 10-7-2 which provides that "of the amount recovered in every action under this chapter one-half shall go to the husband or widow, and one-half shall go to the children of the deceased[.]" However, it is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005).

Nevertheless, waiver notwithstanding, Showley's argument does not prevail. In *Walsh v. Bressette*, 155 A. 1, 2 (R.I. 1931), the supreme court held that "[i]n our opinion the class which is to participate in the recovery is closed, and the beneficiaries determined, not when the death occurs, but when judgment is entered. . . . It follows that the right of [deceased widow] to share to the extent of one-half in the amount recovered terminated with her death and vested in such of the children who are living when judgment is entered."

# IN THE
# COURT OF APPEALS OF INDIANA

EDDIE G. SHOWLEY, Executor, ESTATE OF )
PHILLIP J. SHOWLEY, )
  )
    Appellant-Respondent, )
  )
      vs. )    No. 09A04-1301-ES-22
  )
TRACEY KELSEY, Individually and as )
Successor Personal Representative of the )
ESTATE OF SONYA SUE SHOWLEY, )
  )
    Appellee-Petitioner. )

**BROWN, Judge, dissenting**

I respectfully dissent. In my view, the majority misreads and misapplies the test

articulated in <u>Bruck</u>. In <u>Bruck</u>, we discussed a similar conflict of laws issue previously

addressed by Indiana courts, namely, which forum's law governs liability, and we noted

that the Restatement (Second) of Conflict of Laws provides:

> [T]he distribution of wrongful death proceeds should be governed by the
> state law selected to govern liability, except that

>> where one state is the state of domicile of the decedent and
>> the beneficiaries or the defendant and the beneficiaries, it
>> would seem that, ordinarily at least, the wrongful death
>> statute of this state should be applied to determine how the
>> recovery in a wrongful death action should be distributed.

632 N.E.2d at 747 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 177, cmt. B (1971)). We noted that "[t]he traditional conflict of laws rule in torts has been to apply lex loci delicti–the law of the place where the injury occurred," but that there has been a modern trend to abandon this traditional rule "in favor of the 'most significant relationship' test" contained in the Restatement (Second) of Conflict of Laws, §§ 175 and 177. Id. We also observed that the Indiana Supreme Court, in Hubbard Mfg. Co., Inc. v. Greeson, 515 N.E.2d 1071 (Ind. 1987), adopted a modified version of the "significant relationship test" as follows:

> "Choice-of-law rules are fundamentally judge-made and designed to ensure the appropriate substantive law applies. *In a large number of cases, the place of the tort will be significant* and the place with the most contacts. E.g., Lambert v. Yellowbird, Inc. (1986), Ind. App., 496 N.E.2d 406, 409 n. 2. In such cases, the traditional rule serves well. *A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact*. In those instances where the place of the tort bears little connection to the legal action, this Court will permit the consideration of other factors such as:
>
> > 1) the place where the conduct causing the injury occurred;
> >
> > 2) the residence or place of business of the parties; and
> >
> > 3) the place where the relationship is centered.
>
> Restatement (Second) of Conflicts of Laws § 145(2) (1971). These factors should be evaluated according to their relative importance to the particular issues being litigated.

Id. (quoting Hubbard, 515 N.E.2d at 1073-1074) (emphases added). We then restated that test as: "[L]ex loci delicti is the rule presumptively to be applied unless the place of the tort is an insignificant contact, in which case other factors may be considered. The

9

relative importance of those factors must then be evaluated in determining which state's law to apply." Id. Applying that test to the facts at issue, in which the decedent, an Indiana resident, was traveling on the Ohio turnpike from New York to Indiana when he was struck by a tractor trailer and killed, we determined such contact with Ohio to be insignificant, and were accordingly then "left to consider other factors under the Hubbard analysis" in determining whether Indiana or Ohio's wrongful death distribution laws governed. Id. at 747-748.

Here, by contrast, as alleged in the complaint filed in Rhode Island, although the Kugel Patch was manufactured in Cranston, Rhode Island, the surgery in which the Kugel Patch was implanted into Showley took place in Logansport, Indiana. Logansport was also the place where the subsequent surgeries occurred, as well as where Showley ultimately died. Philip and Showley were domiciled in Cass County, Indiana. Thus, the place of the tort, Indiana, was a very significant contact given the circumstances surrounding the wrongful death action, and it was unnecessary to turn to other factors described in Hubbard. Lex loci delicti should control distribution of the proceeds.

Indeed, my review of applicable Rhode Island law reveals that, had this matter proceeded to trial, the Rhode Island court would have decided to apply *Indiana's* wrongful death statute. Rhode Island has adopted an "interest-weighing" approach to determine which state's law to apply in a given case. Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (citing Woodward v. Stewart, 104 R.I. 290, 299, 243 A.2d 917, 923, (1968), cert. denied, 393 U.S. 957, 89 S. Ct. 387 (1968)). Under this method, the Rhode Island trial court is required to look at the facts of the particular case

10

and determine the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the event and the parties," i.e., the modern significant relationship test. Id. (citing Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997) (quoting Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1351 (R.I. 1986))).

Factors which the Rhode Island court must weigh in determining which law applies are "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Id. (quoting Pardey, 518 A.2d at 1351 (citing Brown v. Church of the Holy Name of Jesus, 105 R.I. 322, 252 A.2d 176 (1969))). Also, in tort cases, the following contacts are also to be considered: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Id. (citing Brown, 105 R.I. at 326-27, 252 A.2d at 179; RESTATEMENT (SECOND) CONFLICT OF LAWS § 145(2) (1971)). Also, according to Rhode Island law, in personal injury actions the law of the state where the injury occurred governs the rights and liabilities of the parties unless one state has a more significant relationship with respect to a particular issue. Id. (citing Blais v. Aetna Casualty & Surety Co., 526 A.2d 854, 856-857 (R.I. 1987); RESTATEMENT (SECOND) CONFLICT OF LAWS § 146 (1971)).

11

Thus, had the Rhode Island court held a trial or ruled on this issue, it is probable that it would have applied Indiana law. That being said, it is puzzling that this court would then apply Rhode Island law to the distribution of the settlement proceeds. Thus, rather than falling into a "legal lacuna," in my view this case is rather straightforward and Indiana's wrongful death scheme should apply.

Having determined that Indiana law applies, the Indiana Supreme Court made clear in Bemenderfer v. Williams that "the wrongful death statute does not operate to preclude the statutory beneficiary who dies before judgment from recovering wrongful death damages." 745 N.E.2d 212, 214 (Ind. 2001). Instead, the person(s) entitled to the estate of the statutory taker stand(s) to recover such proceeds. Id. at 219. Thus, Eddie, as Philip's sole heir, is entitled to Philip's share of the proceeds of Showley's settlement, which is the remainder of the settlement proceeds after payment to Showley's estate of "reasonable medical, hospital, funeral and burial expense[s]," Ind. Code § 34-23-1-1, because Kelsey did not demonstrate that she is a dependent child.[3] See Luider v. Skaggs,

_____

[3] Ind. Code § 34-23-1-1 provides in part:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. *That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. . . .*

12

693 N.E.2d 593, 596 (Ind. Ct. App. 1998) (holding that "the degree of kinship alone should not be the sole factor in determining the right of recovery in a wrongful death action," that "the issue of dependency should also define the right," and "[t]he fact that the decedent is survived by a brother who was not dependent upon her should not foreclose Luider's right to recovery," in which appellant Luider was a dependent second cousin of the decedent and appellee Skaggs, the decedent's non-dependent brother, challenged the distribution), trans. denied; see also Necessary v. Inter-State Towing, 697 N.E.2d 73, 80 (Ind. Ct. App. 1998) ("Thus, the legislature set forth two conditions for recovery under the wrongful death statute: dependency and heirship. If both of these cannot be shown by the claimant, then that person is precluded from recovering as a dependent under the wrongful death statute."), reh'g denied, trans. denied.

Finally, I note that the majority implies that because Philip, in his Petition for Issuance of Letters, named Kelsey as heir of Showley's estate, he meant to pursue the wrongful death claim on her behalf. In my view, however, Philip was merely listing Kelsey as a known heir of Showley's estate, and was not necessarily excluding himself as an heir. Indeed, the court in its order named Philip as Showley's heir when it also appointed Philip the administrator of her estate. To that end, I also note that Philip, in the complaint filed in the Rhode Island court, named himself as both the personal representative "and as next of kin" for Showley. Appellant's Appendix at 13. Indeed, the complaint alleges among other things loss of consortium, in which Philip was the

(Emphasis added).

party directly impacted by the alleged conduct of Davol and Bard. The complaint does not mention Kelsey.

While I may be inclined to agree with the majority to the extent that, between the two prospective takers in this instance, Kelsey appears to be the more sympathetic figure, it also appears clear to me that the balance of Showley's wrongful death proceeds should have been awarded to Philip's estate. I would remand for a determination of the reasonable medical, hospital, funeral and burial expenses to be awarded to Showley's estate, and award the remainder of the proceeds to Philip's estate. I respectfully dissent.